*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NORTHLAND RADIOLOGY, INC.,

      Plaintiff-Appellant

v

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,

      Defendant-Appellee

FOR PUBLICATION
March 25, 2026
10:51 AM

No. 374214
Oakland Circuit Court
LC No. 2024-206950-NF

---

Before: PATEL, P.J., and SWARTZLE and MARIANI, JJ.

SWARTZLE, J. (*concurring*).

I concur in the judgment. I have no dispute with the majority's statutory analysis; it appears to be sound based on a traditional, plain reading of the statutory text. I write separately simply to point out that "incentives matter," and MCL 500.3107d appears to create some odd incentives.

Under this provision, an insured who is a "qualified person" can "elect" (but apparently ineffectively) to forgo personal protection insurance (PIP) coverage for herself and her resident relative in exchange for a reduced premium. MCL 500.3107d(1). Then, after an accident, (1) a medical provider can sue the insurer for the cost of PIP-related services received by the resident relative, (2) argue that the insured's election to forgo PIP coverage was not effective because the resident relative did not, in fact, have qualified health coverage, and (3) by operation of MCL 500.3107d(4), the resident relative is now entitled to full PIP coverage. The insured gets the benefit of the reduced premium, and the resident relative and medical provider get the benefit of full PIP coverage because of MCL 500.3107d(4). Even if the no-fault policy is later rescinded as to the insured, it is an open question whether the insurer might still be required to cover the PIP costs related to the resident relative. See *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 165537); slip op at 33-35.

Thus, the insured has an incentive to save some money by being less-than-candid in making or updating an election under MCL 500.3107d. A resident relative has an incentive to save some money by not maintaining qualified health coverage. And an insurer now has an incentive to spend some money (maybe a great deal) by engaging in an extensive, ongoing investigation to ensure

that an insured who opts out of PIP coverage does so effectively. Just because an incentive exists does not mean everyone will act on it and make the same choice; but it is undeniable that incentives at the micro level can aggregate into material effects at the macro level. Put more simply, this could get costly.

As the majority suggests, our Legislature could have largely avoided this circumstance had it included in MCL 500.3107d similar language as found in MCL 500.3107c(3), whereby there is a "rebuttable presumption that the amount of the premium or installment paid accurately reflects the level of coverage applicable to the policy." But that language is conspicuously missing in the next section over, i.e., MCL 500.3107d, and this strongly suggests that there was a conscious policy choice made by legislators, part of the normal "give-and-take" legislative process. Thus, it remains with our Legislature as the policy-making branch of our government to consider whether these odd incentives are perverse enough to require an amendment to the no-fault act.

/s/ Brock A. Swartzle